In Re: Appeal of Joseph Dillinger. Commonwealth of Pennsylvania, Insurance Department. Joseph Dillinger, Appellant.

Argued September 13, 1976, before Judges CRUM-LISH, JR., WILKINSON, JR. and ROGERS, sitting as a panel of three.

*Joseph K. Pierce,* with him *Ralph D. Tive* and *Baskin, Boreman & Tive,* for appellant.

*Barbara A. Brown,* with her *Andrew F. Giffin,* for appellees.

OPINION BY JUDGE ROGERS, October 8, 1976:

The appellant, Joseph Dillinger, was convicted in the Courts of Montgomery County of perjury and embezzlement while engaged in the insurance business, and on May 26, 1972 was sentenced to a prison term of three years. He served ten months in prison, two months in a community treatment center and then placed on parole for the balance of the two years of his term. However, the Governor of Pennsylvania commuted Mr. Dillinger's sentence as of December 26, 1974.

Mr. Dillinger is trained in the insurance business and has, since his difficulties with the law, desired to be a licensed insurance agent. To this end, in 1973 and 1974 he communicated with persons in the insurance department, both personally and through insurance companies who desired to employ him, inquiring as to the possibility of his obtaining an agent's license. He and the companies sponsoring him were told that no license would be issued while he was on parole. He was, however, advised by the Director of the Licenses and by an Assistant Attorney General that he might apply for licensure when his situation changed.

The Governor's commutation of course terminated the parole and two insurance companies soon sponsored Mr. Dillinger for an agent's license. Accompanying the applications sent to the Department were full disclosures of Mr. Dillinger's earlier difficulties with the law. The Department permitted Mr. Dillinger to take the insurance agent's examination which he passed on January 4, 1975. On January 10, 1975, over the signature of the Insurance Commissioner of the Commonwealth of Pennsylvania, Mr. Dillinger was licensed to act as agent for American Independent Insurance Company. On January 13, 1975, over the signature of the Insurance Commissioner, Mr. Dillinger was authorized to act as agent for Old Heritage Mutual Insurance Company.

On February 18, 1975, Mr. Dillinger received a letter from the Insurance Commissioner who had signed both of his recently granted licenses, that the licenses had been granted in error because they "failed to take proper account of the reference in your application to your prior criminal record." The letter goes on to inform Mr. Dillinger that the licenses issued to him "are hereby rescinded." The letter ends by affording Mr. Dillinger the right to a hearing on the

subject of the letter's "denial" of the licenses (which, of course, had in fact been granted).

Mr. Dillinger has appealed the Insurance Commissioner's adjudication represented by the letter of February 18, 1975 on the ground that having exercised his undoubted discretion to issue the licenses with full knowledge of his, Dillinger's, previous misdeeds, the Commissioner is powerless to rescind or deny the licenses. Mr. Dillinger concedes that his licenses may after hearing be revoked based on his lack of fitness, and that a prior conviction of criminal conduct reflecting on his honesty and integrity would constitute evidence which the Department might consider in this connection. He says, however, quite correctly, that in such proceedings the burden would rest upon the Department to justify the revocation, in contrast to the hearing conducted in this proceeding which followed this adjudication at which the hearing examiner and the Department took the position that Mr. Dillinger had the burden of proving his fitness to hold a license.

The Insurance Department's only argument is that it has the inherent power to correct administrative mistakes and that the issuance of the licenses to Mr. Dillinger in the face of his previous record was an administrative mistake subject to correction by simply rescinding the license. We do not agree that there was anything administratively wrong with the grant of the licenses. It is apparent that the Department knew of Dillinger's record, decided to give him the licenses and then for some reason changed its mind. The Department's regulation on the subject is found at 31 Pa. Code §33.7, and is as follows:

"§33.7. Standards for license issuance.

"(a) The Department may deny an application for agent's or broker's license if any of the following are shown to have occurred:

498

"(1) The applicant has not reached the age of 18 years.

"(2) The applicant for a new license is a cashier or treasurer of any bank or incorporated institution subject to the Banking Code of 1965 (7 P.S. §101 *et seq.*).

"(3 In the case of a firm or corporate license applicant, where an active or inactive member of such firm or corporation is not eligible for individual license.

"(4) The applicant has provided incorrect, misleading or incomplete answers to interrogatories put to him on forms incident to the application for license, or has improperly secured the vouching to such answers by a sponsoring agent or broker or officer of an insurance company.

"(5) The applicant has been denied an agent's or broker's license, or has had an existing license revoked, suspended or not renewed when requested, in any other State, Territory, or Possession of the United States, or in the District of Columbia.

"(6) The applicant has violated any section of the Pennsylvania insurance laws for which the Commissioner has the authority to revoke, suspend or refuse to renew any insurance license then in force.

"(7) The applicant does not possess the professional competence and general fitness required for the doing of the business of insurance. Such determination shall be made after thorough examination of the pertinent information and documents available to the Department which pertain to the honesty, reliability, efficiency, educational training and business experience and reputation of the applicant. The Department will also consider the participation in initial or ongoing training programs offered by the insurance companies represented.

"(b) A showing that within five years prior to making application for an agent's or broker's license an applicant has pleaded guilty, entered a plea of nolo contendere, or has been found guilty in a court of competent jurisdiction of criminal conduct which clearly reflects on the honesty and integrity of the applicant, shall be evidence of lack of fitness for licensure.

"(1) Where such violation is made known to the Department, an applicant may be requested to produce such other evidence of fitness as the Department may determine to be necessary.

"(2) Examples of criminal violations which the Department will interpret as reflecting upon the honesty and integrity of applicants are unlawful advertising of insurance business, unlawful coercion in contracting insurance, furnishing free insurance as an inducement for purchases, unlawful collection agency practices, forgery or fraudulent practices, embezzlement, obtaining money under false pretenses, conspiracy to defraud, bribery or corrupt influence, perjury or false swearing, and any felony of the third degree or higher as graded in Pennsylvania.

"(3) Examples of criminal violations which the Department will not interpret as reflecting upon the honesty and integrity of applicants are all summary offenses, being those for which the maximum term of imprisonment is not more than 90 days, which include such offenses as alcoholic beverage possession by minors, criminal mischief and trespass, disorderly conduct, littering, public drunkenness, shop lifting, traffic violations, and Sunday business restrictions; offenses involving possession or use of contraband articles; and offenses involving personal status or habits where no coerced involvement of another person is evident.

"(4) Applications from those who have been incarcerated in a penal institution for a period of more

than one year in a sentenced status may be denied by the Department until one year following release from such institution has expired."

The regulation provides that the Department *may* deny the application if the applicant lacks general fitness and that a showing of a conviction of criminal conduct shall be evidence of lack of fitness. It also provides that criminal misconduct is not automatically disqualifying and that the Commissioner may use it discretionally. In this case the Commissioner clearly exercised his discretion to issue licenses to Mr. Dillinger despite his earlier misdeeds, of which he had or should have had full knowledge by the communications received and acknowledged by the Department over a period of several years. The discretion was exercised in Mr. Dillinger's favor and cannot be expunged as a simple administrative error.

We therefore do not agree that Mr. Dillinger's licenses were subject to denial as an administrative mistake.

Regulation 33.18 at 31 Pa. Code §33.18, however, reads as follows:

"§33.18. Revocation, suspension, nonrenewal of license.

"The Department may revoke, suspend, or refuse to renew the license of any agent or broker upon finding, after a hearing, that such agent or broker has engaged in conduct which would disqualify him from initial issuance of a license. Such conduct includes the indicated bases for initial denial of a license provided in §33.7 of this Title (relating to standards for license issuance)."

If the Commissioner believes that he and his Department wrongfully exercised their discretion by issuing licenses to Mr. Dillinger they may seek to revoke those licenses based on any of the causes, including Mr. Dillinger's difficulties with the law, which are

listed as grounds for an initial denial in Regulation 33.7.

### Order

And Now, this 8th day of October, 1976, the Insurance Commissioner's adjudication made February 18, 1975 purporting to rescind licenses granted the appellant, Joseph Dillinger, is set aside, without prejudice, however, to the right of the Department to institute such further proceedings with reference to Mr. Dillinger's licenses as it believes desirable in the public interest.