Vincent E. Fumo, Petitioner *v.* Commonwealth of Pennsylvania, Insurance Department, Respondent.

Argued February 6, 1981, before Judges WILKINSON, JR., BLATT and WILLIAMS, JR., sitting as a panel of three.

*Robert Scandone,* with him *Carl N. Martin II,* for petitioner.

*David T. Kluz,* Assistant Attorney General, with him *James R. Farley,* Chief Counsel, Insurance Department, and *Edward G. Biester,* Attorney General, for respondent.

OPINION BY JUDGE BLATT, April 9, 1981:

The petitioner, Vincent E. Fumo, seeks review of an order of the Commissioner of the Pennsylvania Department of Insurance (Department) which revoked his licenses to act as an insurance agent and broker within the Commonwealth.

The petitioner has been licensed by the Department for many years, at least since 1956. On June 26, 1976, he pleaded guilty in the federal district court for the Eastern District of Pennsylvania to multiple counts of making false entries in books and records for purposes of defrauding a savings and loan association and the United States, to multiple counts of willful misapplication of funds and to one count of conspiracy.

About three years later, in February of 1979, the Department issued an order to the petitioner to show cause why his insurance licenses should not be revoked and an evidentiary hearing was held on April 30, 1979. The Commissioner subsequently revoked the licenses on August 16, 1979. Upon appeal of that order, the petitioner sought a supersedeas of the revocation, which was first denied by this Court, but which was later granted on appeal by the Supreme Court.

The petitioner raises numerous attacks on the order in question contending: (1) that his right to procedural due process was violated in that the revocation proceedings unconstitutionally commingled the prosecutorial and adjudicative functions of the Department; (2) that his licenses were revoked pursuant to a statute that is unconstitutionally vague; (3) that the Department violated its own regulations and abused its discretion by revoking his licenses solely on the basis of his criminal conviction and by not considering other evidence as to his good business reputation; and (4) that the revocation of his licenses was barred by the doctrine of laches due to the Department's failure to take action against him for almost three years after the date of his conviction.

As to the allegedly impermissible commingling of prosecutorial and adjudicative powers because the Commissioner who had initiated the proceedings against the petitioner was also the individual who had the ultimate responsibility for deciding the case on the merits, the similarity of this case to *Dussia v. Barger*, 466 Pa. 152, 351 A.2d 667 (1975), seems persuasive.[1] After a closer examination, however, we must hold

---

[1] In *Dussia*, our Supreme Court enjoined the completion of court-martial proceedings because the State Police Commissioner who had initiated the court-martial also had the responsibility to make the ultimate decision as to guilt or innocence.

that due process was afforded here. As we have said previously:

> A general rule has emerged that a decision made by a tribunal after a formal adversarial hearing, where that tribunal has previously generally supervised an investigation into the same matter or made a prehearing determination of probable cause, is not per se an adjudication rendered by a biased tribunal, as long as the prosecutorial and investigatory aspects of the matter are adequately separated from the adjudicatory function.

*In Re: Appeal of Redo,* 42 Pa. Commonwealth Ct. 468, 471-72, 401 A.2d 394, 396 (1979). There has been no allegation here that the conduct of the hearing itself involved an impermissible commingling of functions and we must hold, as did this Court in *Bruteyn Appeal,* 32 Pa. Commonwealth Ct. 541, 380 A.2d 497 (1977), that, in the absence of a showing of actual bias, the preliminary inquiries necessary to determine whether or not sufficient probable cause existed to justify a regulatory hearing do not raise such a risk of prejudice as to taint the decision issued after the adversarial hearing.[2] *See also State Dental Council and Examining Board v. Pollock,* 457 Pa. 264, 318 A.2d 910 (1974).

Nor do we believe that the statute under which the petitioner's licenses were revoked is unconstitutionally vague. Section 639 of The Insurance Department

---

[2] It is also important to note that commingling of functions is much more threatening when it can affect the fact-finding role of the adjudicator and where, as here, the facts are undisputed and the issues center upon the application of the law subject to this Court's review, the existence of unconstitutional prejudice is much less likely. *Pennsylvania Human Relations Commission v. Thorp, Reed & Armstrong,* 25 Pa. Commonwealth Ct. 295, 361 A.2d 497 (1976).

Act of 1921 (Act)[3] provides that the Insurance Commissioner, in his discretion, may suspend or revoke a license or impose a fine if satisfactory evidence indicates that a licensed person has violated any of certain enumerated sections of the Act "or upon satisfactory evidence of such conduct as would disqualify such agent or broker or excess broker from initial issuance of a license under Sections [603 and 622]. . . :" Sections 603 and 622 of the Act, 40 P.S. §§233(a), 252, provide that the Insurance Commissioner may issue a license to any person upon a showing "to the effect that the applicant is of good business reputation, and has experience in underwriting, other than soliciting and is worthy of a license."

We must admit that the criteria of "good business reputation" and "worthy of a license" are, at best, inexact, but, in an industry as highly regulated as is insurance, which requires the investment of broad discretion in the Insurance Commissioner, *Slanina v. Sheppard*, 27 Pa. Commonwealth Ct. 376, 366 A.2d 963 (1976), we must recognize the practical difficulty which the General Assembly faces in drafting a statute general enough to provide for effective regulation and sufficiently detailed to fulfill the requirements of the Constitution. The legislature granted authority to the Commissioner to establish regulations to effectuate the purposes of the Act, Act of September 22, 1978, P.L. 763, 40 P.S. §246, and we believe that the existing regulations[4] adequately clarify the language of the Act so as to avoid any possible constitutional difficulties. Section 33.7(a), 31 Pa. Code §33.7(a), under "Stan-

---

[3] Act of May 17, 1921, P.L. 789, *as amended*, 40 P.S. §279.

[4] An administrative agency's regulations which have been duly authorized and promulgated have the force of law and are binding upon that agency. *Commonwealth of Pennsylvania v. Workmen's Compensation Appeal Board*, 38 Pa. Commonwealth Ct. 280, 392 A.2d 906 (1978) ; *Pennsylvania Association of Life Underwriters v. Commonwealth*, 29 Pa. Commonwealth Ct. 459, 371 A.2d 564 (1977).

dards for license issuance," sets out considerations for denial of a license application: the applicant's age, the truthfulness and accuracy of his answers to the Department's interrogatories, the effect of a prior revocation or suspension of his license in the Commonwealth or another state, whether or not he has violated the insurance laws and whether or not his honesty, education, experience and reputation demonstrate that the applicant is professionally competent. Clause (b) of 31 Pa. Code §33.7 outlines the impact of prior criminal convictions; the effect of their temporal proximity to the present application, the nature of the convictions which may reflect on the honesty and integrity of the applicant, and the significance of incarceration for such convictions. We believe that these regulations are more than sufficient to place an applicant or license holder on notice as to what conduct will be considered by the Commissioner in determining the necessity of a license revocation.

As to the argument that the Commissioner has violated these regulations and committed an abuse of discretion by not thoroughly examining the petitioner's reputation and credentials under Section 33.7(a)(7)[5] of the regulations and by basing the revocation here solely upon his criminal convictions, we must agree with the Department that clause (a)(7), requiring a

---

[5] Section 33.7(a)(7) provides that an application may be denied if:

(7) The applicant does not possess the professional competence and general fitness required for the doing of the business of insurance. Such determination will be made after thorough examination of the pertinent information and documents available to the Department which pertain to the honesty, reliability, efficiency, educational training and business experience, and reputation of the applicant. The Department will also consider the participation in initial or ongoing training programs offered by the insurance companies represented.

thorough examination of an applicant's qualifications, must be read separately from clause (b) which concerns the relevance of criminal conduct. In addition, we agree with the Department's interpretation[6] of the language of clause (b)[7] that a prima facie case of unworthiness for a license was established by merely demonstrating the nature of the petitioner's convictions.[8] See In Re: Appeal of Dillinger, 26 Pa. Commonwealth Ct. 494, 364 A.2d 757 (1976).

Nor can we agree with the petitioner's contention that an equitable principle similar to laches should be applied in this case so as to bar the Department from instituting revocation proceedings almost three years after his convictions. The equitable defense of laches requires that the petitioner demonstrate that he was prejudiced or injured in some way by the Department's delay in revoking his license. See e.g., Flaherty v. Allegheny Port Authority, 450 Pa. 509, 299 A.2d 613 (1973). The petitioner asserts that the Department's inaction adversely affected a person of his advanced years[9] by causing him to bypass business opportunities and to arrange his life-style according to the income that he could expect from his insurance commissions. Although we cannot condone the Department's seemingly dilatory conduct,[10] the petitioner presented no

----

[6] This Court must, of course, give great deference to an agency's interpretation of its own regulations. Orner v. Department of Public Welfare, 44 Pa. Commonwealth Ct. 635, 404 A.2d 452 (1979).

[7] Section 33.7(b) provides that a guilty plea to a charge reflecting upon the applicant's honesty "shall be evidence of lack of fitness for licensure."

[8] There can be no dispute that the petitioner's convictions for fraud and misapplication of funds, although not connected with his insurance business, nevertheless clearly reflect upon his honesty and integrity.

[9] The petitioner was 72 years old at the time of the hearing.

[10] The Department asserted that the delay was attributable to the inability of its limited staff to maintain an ongoing search of

evidence at the hearing to substantiate his allegations that he passed up other business opportunities or that his financial situation is any different now than it was at the time of his convictions. Without such evidence as to the existence of prejudice caused by the delay, laches will not lie. *Tighe v. State Board of Nurse Examiners,* 40 Pa. Commonwealth Ct. 367, 397 A.2d 1261 (1979). In light of the provision of Section 33.7(b) of the regulations, 31 Pa. Code §33.7(b), which places a time limit of five years on the detrimental effect of a prior conviction on a license application, we cannot say that the two and one-half to three year delay here concerned was so grossly unreasonable as to justify relaxation of the requirement that the petitioner demonstrate prejudice resulting therefrom. *Gabster v. Mesaros,* 422 Pa. 116, 220 A.2d 639 (1966); *see also State Dental Council and Examining Board v. Pollock, supra; Tighe v. State Board of Nurse Examiners, supra.*

We will affirm the Commissioner's revocation of the petitioner's licenses.

### ORDER

AND Now, this 9th day of April, 1981, the order of the Commissioner of the Department of Insurance in the above-captioned matter is affirmed.

Judge WILLIAMS, JR. dissents.

This decision was reached prior to the expiration of the term of office of Judge WILKINSON, JR.

---

the relevant criminal court dockets to determine whether licensed agents have been convicted of crimes necessitating discipline. This situation has subsequently been alleviated through promulgation of a regulation requiring insurance agents and brokers to report actionable criminal convictions to the Department within 10 business days. 31 Pa. Code §33.18(b).