618 A.2d 1077

**David WANDER, Petitioner,**

v.

**Constance B. FOSTER, Insurance Commissioner, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 20, 1992.

Decided Dec. 1, 1992.

Scott B. Lang, for petitioner.

Jeffrey P. Soderstedt, for respondent.

Before COLINS and KELLEY, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

This is an appeal from an order of the Insurance Commissioner which affirmed the denial of David Wander's application for a bail bondsman's license.

Wander filed his application for a bail bondsman's license but, on March 18, 1991, it was denied because of his 1980 guilty plea to conspiracy and extortion and because of the objections to the application by the Allegheny County District Attorney's office. Wander then asked for a hearing; a hearing officer was appointed and a hearing was held on May 29, 1991, at which Wander appeared *pro se.*

On November 6, 1991, the Commissioner affirmed the denial and found the following relevant facts.

1. In January 1980, David Wander (hereinafter referred to as "Petitioner") pled guilty in the United States District Court for the Western District of Pennsylvania to three counts of using and causing to be used in interstate com-

merce, a facility with the intent to promote, manage, establish, carry on, and to facilitate the promotion, management, establishment, and the carrying on of an unlawful activity, namely extortion, in violation of 18 U.S.C. §§ 1952(a)(3) and (2) [Notes of testimony at page 4 (N.T. 4); Insurance Department Exhibit No. 1 (ID–1) ].

2. On January 11, 1980, Petitioner also pled guilty in the United States District Court in the Western District of Pennsylvania to one of conspiracy to violate the Travel Act in violation of 18 U.S.C. 371 (N.T. 4; ID–1).

3. Petitioner was sentenced to two years probation beginning January 11, 1980 for his guilty pleas (N.T. 4: ID–1).

12. As part of the application procedure, the Department contacts the District Attorney's office in the county in which the applicant resides in order to get information from that office concerning whether the applicant has any criminal convictions which may go toward his worthiness to hold a license (N.T. 9).

13. The Department mailed a letter to the Allegheny County District Attorney's office asking for information on Petitioner that would be relevant to his being licensed by the Department (N.T. 10).

14. District Attorney Robert Colville contacted the Department by telephone and later sent the Department a letter objecting to Petitioner being issued a bail bondsman's license based upon his prior felony conviction involving actions as a bail bondsman. (N.T. 10–11, 19).

15. The Department denied Petitioner's bail bondsman's license based on his guilty pleas in 1980 and the objections made by the District Attorney for Allegheny County (N.T. 11).

18. Petitioner threatened to blackmail the District Attorney using taped conversation if he did not change his opposition to Petitioner's license.

In the discussion section of the Commissioner's opinion, she held that the 1980 conviction could not be used because it occurred ten years ago, and 31 Pa.Code § 33.7(b), which pertains to the issuance of an agent's or broker's license

provides that only convictions within five years are relevant. However, she held that because certain more recent actions of Wander were threats to blackmail the District Attorney of Allegheny County, Wander was not "rehabilitated" from his 1980 transgression and therefore the license would be denied.

In this appeal, Wander raises two questions. First, he contends that the section of the statute governing the issuance of bail bondsman's licenses is unconstitutionally vague. Second, he contends that the "decision of the insurance commissioner was against the manifest weight of the evidence."

We shall address the constitutional question first.

Section 5743 of the Judicial Code, 42 Pa.C.S. § 5743, Section 5743 provides:

(a) General Rule.—The Insurance Department, upon receipt of:

(1) an application for registration and licensure as a professional bondsman; and

(2) an annual fee of $50.;

shall, if it approves the application, register the applicant as a professional bondsman and issue him a license.

Admittedly, this provision does not set forth any criteria or standards. However, section 5746(b) of the same statute, 42 Pa.C.S. § 5746(b), does specifically provide the grounds for suspension and revocation of a license. It states:

(b) Grounds for suspension or revocation—any license issued under the provisions of this subchapter *may be suspended, ... or may be revoked for good cause, or for any one or more of the following causes:*

(1) Violation of any of the provisions of this subchapter.

(2) Fraudulently obtaining a license under the provisions of this subchapter.

(3) Upon conviction for any criminal offense under the laws of this Commonwealth or under the laws of the United States or any other jurisdiction.

(4) Upon being adjudged a bankrupt or insolvent.

(5) Failing to pay any judgment rendered on any forfeited undertaking in any court of competent jurisdiction.

(6) Any interference or attempted interference with the administration of justice.

We are compelled by the principles of statutory construction, not only to read statutes pertaining to the same subject matter as one, if possible, 1 Pa.C.S. § 1932, but also, in construing the intention of the General Assembly, to presume that the General Assembly did not intend to violate the Constitutions of the United States or of this Commonwealth. 1 Pa.C.S. § 1922(3). In this instance, we therefore hold that those standards which govern the suspension or revocation of licenses are also applicable for the issuance of a license. As matter of fact, it would be absurd to hold that the Insurance Commissioner must issue a license even though she would have "good cause"—the phrase used in Section 5746—to suspend or revoke it. *See also Fumo v. Insurance Department,* 58 Pa.Cmwlth. 392, 427 A.2d 1259 (1980).

Wander's second argument can be rejected out of hand, for it is a contention that the Insurance Commissioner's decision was against the "manifest weight of the evidence." It is not this court's function to weigh the evidence. In *Slanina v. Sheppard,* 27 Pa.Cmwlth. 376, 378–379, 366 A.2d 963, 965 (1976), this Court said:

The Insurance Commissioner, therefore, has clearly been empowered to exercise his discretion in the grant or refusal of license applications. Our scope of review here is limited, therefore, to a determination of whether or not constitutional rights were violated, errors of law were committed, or findings of fact were not supported by substantial evidence. Section 44 of the Administrative Agency Law, Act of June 4, 1945, P.L. 1388, as amended, 71 P.S. § 1710.44. And, where as here, a statute confers discretion upon an administrative tribunal, its actions are subject to judicial review only to determine whether or not there has been an abuse of discretion or a purely arbitrary exercise of authority. *Insurance Department v. Saint Lukes Hospital,* 21 Pa.Commonwealth Ct. 10, 342 A.2d 773 (1975). Whether the court may have reached a different opinion or judgment in a particular case is not sufficient to reverse administrative

action because judicial discretion may not be substituted for administrative discretion. *Insurance Department v. Saint Lukes Hospital, supra.* Slanina admitted in agreeing to the entry of the consent order that he had engaged in misrepresentations which constituted violations of the insurance laws of this Commonwealth. The Commissioner, therefore, determined that Slanina was not worthy of a license and we cannot substitute our discretion for that of the Commissioner. *Wallace v. Insurance Department,* 9 Pa.Commonwealth Ct. 567, 308 A.2d 162 (1973).

We thus affirm the decision of the Commissioner based on the finding that Wander contacted the office of the District Attorney of Allegheny County in an attempt to force him by certain threats to withdraw his opposition to Wander's application [1] and based upon the Commissioner's conclusion that Wander was not rehabilitated. *See Slanina.*

## ORDER

AND NOW, this 1st day of December, 1992, the order of the Pennsylvania Insurance Commissioner entered on November 6, 1991, at No. A91–04–16 is hereby affirmed.

---

1.  We do not consider the Commissioner's use of the term "blackmail" to be accurate.